UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | § | Case No. 22-40918-169 |
| | § | |
| David Alexander Rifkin, | § | Chapter 7 |
| | § | |
| Debtor. | § | Re:  Doc. No. 14 |

## OPINION REGARDING ORDER DENYING
## DEBTOR'S MOTION TO COMPEL ABANDONMENT OF ESTATE

**I.     BACKGROUND**

On March 31, 2022 (the "Petition Date"), David Alexander Rifkin (the "Debtor") filed a petition for bankruptcy relief, docketed as case number 22-40918-169 (the "Case") in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division.  The Debtor filed the Case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").[1]

The Debtor filed bankruptcy schedules and a statement of financial affairs with the bankruptcy petition.  Doc. No. 1.  The Debtor's Schedule A/B: Property (Official Form 106A/B) (the "Schedule A/B") disclosed two checking accounts at Bank of America as of the Petition Date.  Doc. No. 1 at 13, Item 17.  The Schedule A/B described the first account simply as "checking" and valued the Debtor's interest in that account at $115 as of the Petition Date.  Id.  The Schedule A/B described the second account as "checking (bare legal title)" and valued the Debtor's interest in that account as "unknown" as of the Petition Date.  Id.  The Schedule A/B elaborated:  "Bank of America – Debtor opened this account when his son was a minor. Debtors son has since become

---

[1]  References to "Doc. No. ___" in this Order are to documents entered upon this Court's docket in the Bankruptcy Case.  References to "D.E. __/__/__" in this Order are to text entries entered upon this Court's docket in the Bankruptcy Case.  This Court uses these references to enhance the clarity of this Order and the record.

1

an adult and exercises complete control over this account. Debtor does not make any financial contributions to this account. Disclosed in abundance of caution." (sic) Id.

The Debtor's Schedule I: Your Income (Official Form 106I) showed the Debtor as unemployed and without any source of monthly income as of the Petition Date. Doc. No. 1 at 30-31. The Debtor's Schedule J: Your Expenses (Official Form 106J) ("Schedule J") estimated the Debtor's expenses at $2,273 per month as of the Petition Date. Id. at 32-33. The Schedule J stated that the Debtor did not have any dependents and that his expenses did not include the expenses of persons other than himself. Id. at 32, Part 1, Items 2 & 3. The Schedule J supplemented the disclosures in that Schedule, stating "Debtor has no sources of income and did not work during the CMI period. He has a series of medical issues that have prevented him from working. He relies on his adult children for financial support." Id. at 33, Part 2, Item 24.

The Debtor's Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107) (the "Statement of Financial Affairs") asserted that the Debtor generated no income from employment or operating a business in calendar 2022 prior to the Petition Date, but had gross income of $1,201.96 in 2021 and unknown gross income in 2020. Doc. No. 1 at 35-36, Part 2, Item 4. The Statement of Financial Affairs also reflected that the Debtor had non-employment income in 2022 prior to the Petition Date consisting of $4,000 cashed out from a TD Ameritrade account. Id. at 36, Part 2, Item 5.

### A.    The Abandonment Motion

On June 20, 2022, the Debtor filed his Motion to Compel Abandonment of Estate (the "Motion"), which this Court understands to request entry of an order compelling Kristin J. Conwell, the Chapter 7 Trustee in the Case (the "Trustee"), to abandon the bankruptcy estate's interest in the Bank of America account listed on Schedule A/B and described as one to which the

2

Debtor "holds bare legal title." Doc. No. 14 at 1, ¶ 2 & Plea. The Motion alleged that "none of the funds in the bank account belong to Debtor". Id. at 1, ¶ 5. The Motion averred that Bank of America had placed an administrative freeze on that bank account and refused to "unfreeze the bank account until the Trustee abandons the estate." Id. at 2, ¶ 9. The Motion asserted that entry of an order compelling abandonment of that account comprises proper relief because "none of the funds in this bank account belong to Debtor" and, as a result, the Trustee could not administer upon that account for the benefit of the bankruptcy estate. Id. at 2, ¶¶ 10-11.

The Trustee timely responded to the Motion. Doc. No. 16. The Trustee's response objected to the grant of the relief requested in the Motion because the Trustee had a right to the funds in the account. Id. at 3, ¶ 10. The Trustee's response clarified that the Debtor sought to compel abandonment of two bank accounts at Bank of America ending in 1698 and 1708 (respectively, the "1698 Account" and the "1708 Account," and collectively the "Accounts") titled in the names of the Debtor and his adult son, Deshoughn Rifkin. Id. at 1, ¶ 1. The Trustee alleged that the Accounts contained over $10,000 "according to Schedule A/B and information obtained at the Meeting of Creditors." Id. at 1, ¶ 2. The Trustee argued that, under Missouri law, the Debtor and Deshoughn Rifkin jointly owned the Accounts as of the Petition Date. Id. at 1-3, ¶¶ 4-5, 8-9. The Trustee cited the Debtor's right to withdraw from the Accounts, and actual withdrawals from those Accounts, as evidence that the Accounts comprised estate property in which the Trustee had a right. Id. at 2-3, ¶¶ 5, 8, 10. As a result of the Trustee's response to the Motion, the Debtor noticed the Motion out for hearing. Doc. No. 15.

On July 6, 2022, the Debtor filed a paper captioned as "Rebuttal" that asserted that "[n]ot a single document has corroborated the trustee's assertion that the debtor withdrew funds from the bank accounts on numerous occasions." Doc. No. 18 at 1, ¶ 2. The Rebuttal also asserted that all

3

"the funds" belonged to the Debtor's son and that the Debtor and his son intended the son to have exclusive use of and control over the Accounts.  Id. at 1-2, ¶¶ 4, 13.

### B.     *Hearing*

This Court heard argument about the Motion on July 19, 2022.  Doc. No. 22.  The Debtor appeared at the hearing individually and by counsel and the Trustee also appeared by counsel.  Id. This Court heard argument from the parties' counsel and then heard testimony from the Debtor and Deshoughn Rifkin.  Id.  At the conclusion of the testimony, this Court received two exhibits submitted by the Debtor:  an Exhibit A consisting of Schedule A/B, the filed Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F), Schedule J, the filed Declaration About an Individual Debtor's Schedules (Official Form 106Dec), the Statement of Financial Affairs, and the filed Disclosure of Compensation of Attorney for Debtors, see Doc. 1 at 10-15, 19-27, 32-41, 51, and an Exhibit B consisting of a copy of the combined account statement for the Accounts for the period from February 24, 2022 to March 28, 2022.  Id.  The Court also heard concluding arguments from the parties' counsel at that time.  Id.

This Court read its ruling into the record at the conclusion of the hearing.  At the request of the Debtor's counsel, this written order memorializes that ruling.

## II.    **Jurisdiction and Venue**

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 151, 157(a) and 1334 and Local Rule 9.01(B)(1) of the United States District Court for the Eastern District of Missouri.  Venue for this matter rests properly in the Eastern District of Missouri under 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(E).

## III.   **Underlying Law**

The Debtor moves for an order compelling the Trustee to abandon the Accounts under 11 U.S.C. § 554. Doc. No. 14. Section 554(b) of the Bankruptcy Code provides: "[o]n request of a party in interest and after notice and a hearing, the court may order the Trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). The party seeking to compel abandonment from a bankruptcy estate bears the burden to proving property is burdensome to the estate or is of inconsequential value and benefit to the estate. In re Alexander, 289 B.R. 711, 715 (B.A.P. 8th Cir. 2003), aff'd, 80 F. App'x 540 (8th Cir. 2003).

Property of a bankruptcy estate generally includes all legal or equitable interests of the debtor in property at the time of a case's commencement. 11 U.S.C. § 541(a). Eighth Circuit law confirms that "[t]he nature and extent of the debtor's interest in property are determined by state law." In re WEB2B Payment Sols., Inc., 815 F.3d 400, 405 (8th Cir. 2016) (quoting In re N.S. Garrott & Sons, 772 F.2d 462, 466 (8th Cir. 1985)). "Once property rights are determined, 'federal bankruptcy law dictates to what extent that interest is property of the estate.'" WEB2B Payment Sols., 815 F.3d at 405 (quoting Garrott, 772 F.2d at 466). Therefore, this Court must determine the extent of the Debtor's interest in the Accounts and whether they comprise property of the Debtor's bankruptcy estate before addressing the Debtor's contention that the funds in the Accounts are burdensome to the estate or of inconsequential value.

### A. *Ownership of the Accounts*

Mo. Rev. Stat. § 362.470.1 provides that a deposit into an account in the name of two or more persons presumptively creates a statutory joint tenancy. MO. REV. STAT. § 362.470 (2022); In re LaGarce's Est., 487 S.W.2d 493, 499 (Mo. 1972); Dickinson v. Dickinson, 87 S.W.3d 438, 444 (Mo. Ct. App. 2002). Accordingly, "[d]eposits made and accounts created within the purview

5

of [section 362.470] presumptively become the property of the persons named as joint tenants and, absent competent evidence to the contrary, actually fix the ownership of the funds in the persons named as joint tenants." LaGarce's Est., 487 S.W.2d at 499.

Missouri case law recognizes a presumption that persons named as joint tenants on an account have equal ownership in and rights to that account and the funds in it, so long as the account and any deposits comply with the requirements of Mo. Rev. Stat. § 362.470. Auffert v. Auffert, 829 S.W.2d 95, 98 (Mo. Ct. App. 1992). A deposit into an account complies with Mo. Rev. Stat. § 362.470's requirements if the deposit was payable to the depositors as joint tenants, if the account may be paid to any one or more of the named account owners, or if the account may be paid to the survivor or survivors of the named account owners. Maudlin v. Lang, 867 S.W.2d 514, 516-17 (Mo. banc 1993) (Benton, J.). Statutory compliance conclusively proves that the depositing party intended to create a joint tenancy and renders subsequent evidence of the depositor's intent irrelevant. Id. Deposit account agreements typically determine whether a deposit is made "in [a] form to be paid to any one or more of [the named persons]." Id. at 516-17. Courts only examine a depositor's intent at the time of deposit to determine whether a joint tenancy exists if deposit documents or account agreements fail clearly to designate who has a right to payment from a deposit account. Id. at 517; LaGarce's Est., 487 S.W.2d at 500.

Further, a rebuttable presumption exists that joint account holders possess equal rights in an account, subject to presentation of substantial competent evidence that the depositor did not intend to create a joint tenancy with equal ownership. Auffert, 829 S.W.2d at 98. Differing levels of contribution to an account may indicate the parties' intent about account use, but do not definitively determine whether an account comprises a joint account. Loutzenhiser v. Best, 565 S.W.3d 723, 729 (Mo. Ct. App. 2018), Blue Valley Fed. Sav. & Loan Ass'n v. Burrus, 637 S.W.2d

6

737, 745 (Mo. Ct. App. 1982).  In all events, the party challenging the presumed existence of a joint tenancy bears the burden to prove that an account or deposit does not comply with Mo. Rev. Stat. § 362.470.  LaGarce's Est., 487 S.W.2d at 499.

IV.   ANALYSIS

    A.   *Ownership of the Accounts*

These standards require this Court to determine whether the Debtor satisfies the burden of proof to demonstrate that the Accounts and any deposits into them comply with Mo. Rev. Stat. § 362.470.  To do so, this Court turns to the evidence before it.

Based upon the testimony presented, this Court finds it credible that the Debtor and Deshoughn Rifkin opened the Accounts jointly when Deshoughn Rifkin was a minor and that both of them remained on the Accounts as of the Petition Date.  Doc. No. 22 (comprising audio file of hearing on Motion).  This Court also finds credible testimony that the Debtor and Deshoughn Rifkin reside together in the same household and divide their household expenses as they agree.

Exhibit A introduced at hearing includes a copy of Schedule A/B, which acknowledges that both the Debtor and his adult son possessed an interest of some type in an account at Bank of America — Account 1698.  Doc. No. 1 at 13, Item 17; Ex. A. at 4.  This Court notes that testimony at the hearing clarified that the Debtor had interests in three accounts at Bank of America as of the Petition Date: the Accounts, both held by the Debtor and his adult son, and an additional account ending in 0165 ("Account 0165").  It is unclear whether Schedule A/B attempted to disclose Account 0165 and Account 1698 or both the Accounts.  However, this does not dispose of whether any account comprises property of the Debtor's bankruptcy estate.

Exhibit B, a single bank statement from Bank of America for the Accounts for parts of February and March 2022, comprises the only Bank of America document provided as evidence

to this Court. That statement names both the Debtor and Deshoughn Rifkin as parties receiving the statement, but does not provide any other information about ownership of the Accounts. Ex. B at 1, 3, 7. Exhibit B does not describe the Debtor or his adult son as joint tenants of the Accounts or indicate whether either of them possesses a right of survivorship regarding the Accounts. Ex. B. No document or other evidence presented to the Court affirmatively demonstrated that Debtor had or lacked the right to withdraw money from the Accounts. Maudlin, 867 S.W.2d at 516-17.

The Debtor and Deshoughn Rifkin testified that the Debtor did not have a debit card for Account 1698 and that they did not intend to give the Debtor an ownership interest in the Accounts. Doc. No. 22. However, no testimony disputed the Debtor's right or the ability to withdraw money from the Accounts via an online or counter transaction. Indeed, the fact that the Debtor retained some type of present ownership interest in the Accounts as of the Petition Date prevents that conclusion.

Both testimony and Exhibit B show that the Debtor engaged in transactions involving Account 1698 and that Account 1698 had been used for transactions for or related to the Debtor's benefit during the statement period. For example, Exhibit B shows a March 8, 2022 transfer of $300 from Account 1698 to what the parties referenced as the "Debtor's personal checking account," Account 0165. Doc. No. 22; Ex. B. at 5. Neither the Debtor nor Deshoughn Rifkin could explain during their testimony why that transfer to Account 0165 occurred. Doc. No. 22. In addition, on March 16, 2022, the Debtor transferred $200 from Account 0165 to Account 1698. Doc. No. 22; Ex. B. at 3. Both the Debtor and Deshoughn Rifkin testified that the Debtor had transferred that money to Account 1698 because Deshoughn Rifkin paid a $198.54 gas bill for their shared residence. Ex. B. at 3, 4, 6, Doc. No. 22. This Court notes that both the Debtor and Deshoughn Rifkin testified that the Debtor normally paid this type of expense as part of an

8

agreement to allocate bills for their joint residence. Doc. No. 22. In addition, on March 9, 2022, Deshoughn Rifkin paid for wireless internet service from Account 1698. Ex. B. at 4, Doc. No. 22. Both the Debtor and Deshoughn Rifkin testified that Deshoughn Rifkin routinely pays that expense for their joint residence and the Debtor uses that service as a matter of course. Doc. No. 22. This Court notes that the testimony from the Debtor and Deshoughn Rifkin about shared and allocated residence expenses contradicts the statement in the Schedule J that the Debtor's scheduled expenses did not include expenses for someone other than the Debtor. See Doc. No. 1 at 32, Part 1, Item 3.

Deshoughn Rifkin provided further testimony to explain that he regularly transferred money from Account 1698 to his brother, Nathaniel Rifkin, to reimburse Nathaniel Rifkin when he paid the Debtor's expenses, including residential rent. Id. Illustrating this, Exhibit B shows that someone — Deshoughn Rifkin according to his own testimony — regularly transferred money from Account 1698 to Nathaniel Rifkin, including a $20 transfer on February 28, 2022, a $650 transfer on March 7, 2022, and a $350 transfer on March 8, 2022. Doc. No. 22; Ex. B. at 5. At hearing, Deshoughn Rifkin could not recall why he transferred $20 to Nathaniel Rifkin on February 28, 2022, but explained that the other transfers comprised repayment of a portion of the Debtor's expenses to Nathaniel Rifkin. Doc. No. 22.

Exhibit B and the testimony related to it demonstrate that money moved in and out of Account 1698 to and from Account 1708 and "the Debtor's personal account," Account 0165, and that those funds moved to the Debtor and/or for his benefit, including direct and indirect payment of some of his expenses. Ex. B; Doc. No. 22. Exhibit B, corroborated by testimony from the Debtor and Deshoughn Rifkin, also shows that during the period covered by Exhibit B and including the Petition Date, all the funds deposited into Account 1708 came from Account 1698,

9

meaning that those deposits appear to be from one joint account to another joint account. Ex. B. at 7.

But Exhibit B shows the course of transactions for the Accounts only during a limited period. Neither party presented any Bank of America or other documents showing the initial titling of the Accounts, the initial deposits into those Accounts, the terms of any agreement with Bank of America regarding those Accounts, or any history on the Accounts outside of the period covered by Exhibit B. It is unclear why this is the case, but it leaves this Court without what Missouri law defines as the primary information to consider in evaluating the issues before this Court and with a deficient record.

Turning to the parties' intent regarding the Accounts, the Debtor and Deshoughn Rifkin testified that they intended to devote the Accounts to Deshoughn Rifkin's exclusive use. Doc. No. 22. However, other testimony in this matter and Exhibit B show deposits of monies from Account 0165 to Account 1698, deposits from Account 1698 to Account 0615 — purportedly the Debtor's separate account — for use for his personal expenses, and deposits of funds from Nathaniel Rifkin for the Debtor's expenses into Account 1698. Doc. No. 22. These deposits limit the credibility that this Court can place on the testimony about the parties' intent about the Accounts' ownership, especially when the Debtor failed satisfactorily to explain why he received statements for, retained access to, and engaged in transfer transactions involving the Accounts years after his adult son reached the age of majority if he did not own those Accounts.

Without additional bank documents or sufficiently consistent evidence on the parties' intent, this Court cannot conclude that the Debtor does not have a legal or equitable interest in the Accounts or that the Debtor successfully rebutted any presumption of equal ownership in the Accounts. As this matter stands, the preponderance of the evidence before this Court credibly

10

shows that the Debtor and Deshoughn Rifkin to own the Accounts as joint tenants and equal owners. The burden rested on the Debtor to rebut the applicable presumptions related to these issues, but the Debtor failed to provide adequate proof to do so.

### B.    *Abandonment of Property of the Estate*

To prevail on the Motion, the Debtor must prove by a preponderance of the evidence that bankruptcy estate property consisting of the funds held in the Accounts had only inconsequential value or burdened to the bankruptcy estate. In re Gill, 574 B.R. 709, 714 (B.A.P. 9th Cir. 2017). Unrebutted evidence before this Court shows that the Accounts comprise property of the estate in which the Debtor had a legal and equitable interest because the Debtor had those interests in the Accounts as of the Petition Date. 11 U.S.C. § 541(a)(1); Ex. A at 17, Part 3, Item 17.

Moreover, the Debtor did not submit any evidence that the Accounts burden the estate or have inconsequential value: Exhibit B shows the Accounts had a combined balance of $10,788.79 on March 28, 2022, only three days before the Petition Date, Ex. B at 1, and the supporting documents attached to the Motion raise the inference that substantial funds remained in the Accounts as of the time the Debtor put the Motion before this Court. Doc. No. 14, Ex. B, C. Therefore, the Debtor has not met his burden of proof on this issue. Cf. In re Nelson, 251 B.R. 857, 860 (B.A.P. 8th Cir. 2000) (finding property burdensome to estate where it secured debt far more than its value).

This Court's ruling does not consider any facts outside the record — facts not presented to this Court – that might have satisfied the Debtor's burdens. The pleadings of record in the Case and the parties' arguments make clear that other documents potentially relevant to this matter exist, including additional statements for the Accounts. This Court's docket shows that the Trustee filed a Notice of Intent to Serve Subpoena for Documents without Deposition seeking document

11

production from Bank of America, Doc. No. 17, and that the Debtor objected to that Notice. Doc. No. 20. The Federal Rules of Civil Procedure, applicable to aspects of this matter as a contested proceeding under Federal Rule of Bankruptcy Procedure 9014, do not automatically offer relief of that type regarding a subpoena, particularly when that subpoena already has been served as per the Certificate of Service filed on this Court's docket. See Doc. No. 19. Regardless, the record here does not appear to contain any of the documents sought under the referenced subpoena.

As a final observation, this Court retains the overwhelming impression that the parties presented it with less than all the available evidence regarding this matter. This Court cannot know why the parties chose not to make a more complete record in this matter, particularly when additional bank documents, including months of statements, must exist if the Accounts have been open since Deshoughn Rifkin was a minor. However, left with the record at hand, this Court must deny the Motion to Compel Abandonment without prejudice due to the Debtor's failure to prove entitlement to the requested relief by a preponderance of the evidence. The parties must now decide how they wish to proceed on these matters, be it by settlement, or further request to this Court upon a more complete record by stipulation or otherwise.

## V.   CONCLUSION

Now, therefore, it is **ORDERED** that David A Rifkin's Motion to Compel Abandonment of Estate [Doc. No. 14] is **DENIED WITHOUT PREJUDICE**. Moreover, the Debtor's Objection to Subpoena, [Doc. No. 20] is **OVERRULED** as moot.

DATED: September 30, 2022
St. Louis, Missouri
mtc

BONNIE L. CLAIR
Chief United States Bankruptcy Judge

Copies to:

**David Alexander Rifkin**
1820 Flamingo Drive
Florissant, MO 63031
DEBTOR

**Maxwell Joseph Groswald**
P.O. Box 179343
St. Louis, MO 63117
ATTORNEY FOR DEBTOR

**Gary L. Vincent**
P.O. Box 56550
St. Louis, MO 63156
ATTORNEY FOR TRUSTEE

**Kristin J Conwell**
P.O. Box 56550
St. Louis, MO 63156
CHAPTER 7 TRUSTEE

**Office of U.S. Trustee**
111 S. Tenth St., Ste 6.353
St. Louis, MO 63102